1  PENELOPE A. PREOVOLOS (CA SBN 87607)
   (PPreovolos@mofo.com)
2  STUART C. PLUNKETT (CA SBN 187971)
   (SPlunkett@mofo.com)
3  SUZANNA P. BRICKMAN (CA SBN 250891)
   (SBrickman@mofo.com)
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, California  94105-2482
   Telephone:  415.268.7000
6  Facsimile:  415.268.7522

7  *Attorneys for Defendant*
   APPLE INC.

8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12

13  DANIEL DONOHUE, individually and on          Case No. 5:11-cv-05337 RMW
    behalf of all others similarly situated,
14                                               **CLASS ACTION**
                        Plaintiff,
15                                               **APPLE INC.'S NOTICE OF MOTION
          v.                                     AND MOTION TO DISMISS FIRST
16                                               AMENDED COMPLAINT;
    APPLE INC.,                                  MEMORANDUM OF POINTS AND
17                                               AUTHORITIES IN SUPPORT THEREOF**
                        Defendant.
18                                               Judge:      Hon. Ronald M. Whyte
                                                 Hearing:    May 4, 2012; 9 a.m.
19                                               Courtroom:  6, 4th Floor
20                                               Amended FAC Filed:  February 21, 2012
21                                               Trial Date:  None Set
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...........................................................................................ii

NOTICE OF MOTION AND MOTION TO DISMISS ............................................viii

ISSUES TO BE DECIDED.........................................................................................viii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................... 2

LEGAL STANDARD ................................................................................................... 4

ARGUMENT ................................................................................................................ 5

I.  PLAINTIFF LACKS STANDING ................................................................... 5

    A.  Plaintiff Lacks Article III and Statutory Standing............................... 5

    B.  Plaintiff Lacks Standing to Assert Claims Based on iPhone Models that He Did Not Purchase ..................................................................... 8

II.  THE FAC IGNORES INSURMOUNTABLE CHOICE-OF-LAW ISSUES ................. 9

III.  RULE 9(b) REQUIRES DISMISSAL OF PLAINTIFF'S CONSUMER PROTECTION CLAIMS ................................................................................. 9

    A.  Rule 9(b) Applies to All Claims that Allege a Unified Course of Fraud .................................................................................................. 9

    B.  Plaintiff Does Not Satisfy Rule 9(b) ................................................ 11

        1.  Plaintiff Fails to Allege the Specific Representations He Was Exposed to as Required to State Consumer Protection Claims.................................................................................... 11

        2.  Plaintiff Fails to Allege Reliance and Causation.................... 15

    C.  Plaintiff's UCL Claim Also Fails Because Plaintiff Does Not Allege "Unfair" Conduct Under the UCL ................................... 17

IV.  PLAINTIFF'S BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING CLAIMS FAIL ............................. 18

V.  PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS OR IMPLIED WARRANTIES ....................................................................... 21

    A.  Plaintiff Does Not Allege that His iPhone Failed to Function Properly ......................................................................................... 21

    B.  Plaintiff's Warranty Claims Are Barred by His Failure to Give Pre-Suit Notice ......................................................................................... 21

    C.  Plaintiff Cannot State a Claim for Breach of Implied Warranty ....... 23

    D.  Plaintiff's Claim Similarly Fails Under the Magnuson-Moss Warranty Act ................................................................................... 24

VI.  PLAINTIFF'S CLAIM FOR RESTITUTION SHOULD BE DISMISSED ................. 24

CONCLUSION ........................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Alvarez v. Chevron Corp.*,
5
    656 F.3d 925 (9th Cir. 2011) ................................................................................... 22

6

*Am. Suzuki Motor Corp. v. Superior Court*,
    37 Cal. App. 4th 1291 (1995) ................................................................................. 23

7

*Ashcroft v. Iqbal*,
8
    556 U.S. 662, 129 S. Ct. 1937 (2009) ......................................................... 4, 5, 16

9

*Baltazar v. Apple Inc*.,
    No. CV-10-3231-JF, 2011 U.S. Dist. LEXIS 13187 (N.D. Cal. Feb. 10, 2011) ......... 11, 13, 14
10

11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 6

12

*Birdsong v. Apple Inc.*,
13
    590 F.3d 955 (9th Cir. 2009) .............................................................................. 8, 23

14

*Bower v. AT&T Mobility, LLC*,
    196 Cal. App. 4th 1545 (2011) ................................................................................ 7
15

16

*Buckland v. Threshold Enters., Ltd.*,
    155 Cal. App. 4th 798 (2007) ................................................................................ 15

17

*Buller v. Sutter Health*,
18
    160 Cal. App. 4th 981 (2008) ................................................................................ 17

19

*Camacho v. Auto. Club of S. Cal.*,
    142 Cal. App. 4th 1394 (2006) ........................................................................ 17-18
20

21

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
    169 Cal. App. 4th 116 (2008) ................................................................................ 22

22

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
23
    No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) ......................... 8

24

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ........................................................................................... 17
25

26

*Chavez v. Nestle USA, Inc.*,
    No. CV 09-9192-GW, 2011 U.S. Dist. LEXIS 9773 (C.D. Cal. Jan. 10, 2011) ....................... 12

27

*Clemens v. DaimlerChrysler Corp.*,
28
    534 F.3d 1017 (9th Cir. 2008) ........................................................................ 4, 23-24

*Cohen v. DirecTV, Inc.*,
   178 Cal. App. 4th 966 (2009) ............................................................................. 11, 17

*Contos v. Wells Fargo Escrow Co., LLC*,
   No. C08-838Z, 2010 U.S. Dist. LEXIS 77225 (W.D. Wash. July 1, 2010) .......................... 12

*Das v. WMC Mortg. Corp.*,
   No. 10-CV-00650-LHK,
   2011 U.S. Dist. LEXIS 136740 (N.D. Cal. Nov. 28, 2011) .................................... 6, 19, 20, 21

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ............................................................................. 15

*Fid. Mortg. Corp. v. Seattle Times Co.*,
   213 F.R.D. 573 (W.D. Wash. 2003) .......................................................... 10, 12 n.6

*Fieldstone Co. v. Briggs Plumbing Prods., Inc.*,
   54 Cal. App. 4th 357 (1997) ............................................................................... 22

*Fraley v. Facebook, Inc.*,
   No. 11-CV-01726-LHK, 2011 U.S. Dist. LEXIS 145195 (N.D. Cal. Dec. 16, 2011) ........... 25

*Galicia v. Country Coach, Inc.*,
   324 Fed. App'x 687 (9th Cir. 2009) ..................................................................... 24

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wn.2d 778 (Wash. 1986) ................................................................... 6, 15, 17

*Harmon v. Hilton Group*,
   No. C-11-03677 JCS, 2011 U.S. Dist. LEXIS 136064 (N.D. Cal. Nov. 28, 2011) ................ 6

*Homchick v. Allstate Ins. Co.*,
   No. C04-5639 RJB, 2005 U.S. Dist. LEXIS 25645 (W.D. Wash. Oct. 19, 2005) ................ 15

*Hovsepian v. Apple Inc.*,
   No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 80868 (N.D. Cal. Aug. 21, 2009) ......... 14 n.7

*Hovsepian v. Apple Inc.*,
   No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 117562 (N.D. Cal. Dec. 17, 2009) ............. 14

*Howl v. Bank of Am., N.A.*,
   No. C 11-0887 CW, 2011 U.S. Dist. LEXIS 91698 (N.D. Cal. Aug. 17, 2011) ................... 25

*In re Actimmune Mktg. Litig.*,
   No. C 08-02376 MHP, 2010 U.S. Dist. LEXIS 90480 (N.D. Cal. Aug. 31, 2010),
   *aff'd*, 2011 U.S. App. LEXIS 26054 (9th Cir. Cal. Dec. 30, 2011) .................................. 5, 25

*In re Apple & AT&TM Antitrust Litig.*,
   596 F. Supp. 2d 1288 (N.D. Cal. 2008) ................................................................ 15

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
801 F. Supp. 2d 993 (S.D. Cal. 2011) .................................................................. 16 n.8

*In re iPhone 3G Prods. Liab. Litig.*,
728 F. Supp. 2d 1065 (N.D. Cal. 2010) ................................................................. 24

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK,
2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011) ............................... *passim*

*In re NVIDIA GPU Litig.*,
No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500 (Nov. 19, 2009) ................. 24

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ........................................................................... 8 n.4, 15

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*,
No. 10-02712-CJC, 2011 U.S. Dist. LEXIS 110206 (C.D. Cal. Sept. 12, 2011) ................... 11

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*,
162 Wn.2d 59 (Wash. 2007) ................................................................................ 15

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010) ........... 9

*Kanter v. Warner-Lambert Co.*,
99 Cal. App. 4th 780 (2002) ............................................................................... 23

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................... 9, 10, 2, 14

*Khoury v. Maly's of Cal., Inc.*,
14 Cal. App. 4th 612 (1993) ............................................................................... 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ............................................................................................ 5

*Kowalsky v. Hewlett-Packard Co.*,
No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379 (N.D. Cal. Aug. 10, 2011) ............ 11

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005),
*abrogated on other grounds by AT&T Mobility LLC v. Concepcion*,
__ U.S. __, 131 S. Ct. 1740 (2011) ...................................................................... 16

*Lewis v. Casey*,
518 U.S. 343 (1996) ............................................................................................ 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................*passim*

*Marcelos v. Dominiguez*,
   No. C 08-00056 WHA, 2008 U.S. Dist. LEXIS 91916 (N.D. Cal. Apr. 21, 2008) ..........24-25

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ...........................................................................................9, 11

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) .................................................................................................24

*McKinney v. Google, Inc.*,
   No. 5:10-CV-01177 EJD (PSG),
   2011 U.S. Dist. LEXIS 97958 (N.D. Cal. Aug. 30, 2011) .......................................................24

*Meaunrit v. Pinnacle Foods Grp., LLC*,
   No. C 09-04555 CW, 2010 U.S. Dist. LEXIS 43858 (N.D. Cal. May 5, 2010) ...................25

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009)...............................................................................................8 n.4, 15

*Michael v. Mosquera-Lacy*,
   165 Wn.2d 595 (Wash. 2009) .............................................................................................. 12

*Minnick v. Clearwire US, LLC*,
   683 F. Supp. 2d 1179 (W.D. Wash. 2010) .........................................................8 n.4, 12 & n.6

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003) .................................................................................................23

*Nordberg v. Trilegeant Corp.*,
   445 F. Supp. 2d 1082 (N.D. Cal. 2006)..............................................................................9 n.5

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008),
   *aff'd*, 322 Fed. App'x 489 (9th Cir. 2009) .......................................................................5, 11

*Otworth v. S. Pac. Transp. Co.*,
   166 Cal. App. 3d 452 (1985).................................................................................................18

*Patel et al. v. Apple Inc.*,
   Case No. 1-10-CV-16772, Dkt No. 38 (Feb. 15, 2011) .....................................................4 n.2

*Pfizer Inc. v. Superior Court*,
   182 Cal. App. 4th 622 (2010)................................................................................................11

*Pollard v. Saxe & Yolles Dev. Co.*,
   12 Cal. 3d 374 (1974)............................................................................................................22

*Progressive W. Ins. Co. v. Superior Court*,
    135 Cal. App. 4th 263 (2005) .................................................................................. 18

*Rooney v. Sierra Pac. Windows*,
    No. 10-CV-00905-LHK, 2011 U.S. Dist. LEXIS 117294 (N.D. Cal. Oct. 11, 2011) .... 24 n.10

*Scott v. Metabolife Int'l, Inc.*,
    115 Cal. App. 4th 404 (2004) .................................................................................... 6

*Smith v. Apple Inc.*,
    No. 08-AR-1498-S, 2008 U.S. Dist. LEXIS 111777 (N.D. Ala. Nov. 4, 2008) .................... 22

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009)............................ 24

*Tietsworth v. Sears, Roebuck & Co.*,
    No. 5:09-CV-00288 JF (HRL),
    2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13, 2009) ...................... 8 n.4, 10, 14 & n.7, 15

*Vann v. Aurora Loan Servs. LLC*,
    No. 10-CV-04736-LHK, 2011 U.S. Dist. LEXIS 60223 (N.D. Cal. June 3, 2011) ............... 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .................................................................................. 10

*Vitt v. Apple Computer, Inc.*,
    No. 10-55941, 2012 U.S. App. LEXIS 4419 (9th Cir. Cal. Feb. 28, 2012) ........................... 14

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) .................................................................................... 5

*Wilson v. Hewlett-Packard Co.*,
    No. 10-16249, 2012 U.S. App. LEXIS 3174 (9th Cir. 2012).............................. 4, 11, 14 & n.7

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004) ..................................................................................... 5

*Wooten v. BAC Home Loans Servicing, LP*,
    No. 10-CV-04946-LHK, 2011 U.S. Dist. LEXIS 12249 (N.D. Cal. Feb. 8, 2011) ............... 20

**STATUTES**

15 U.S.C. § 2310(e) ................................................................................................ 24

Cal. Bus. & Prof. Code
    § 17204 ............................................................................................................. 15
    § 17535 ............................................................................................................. 15

Cal. Civ. Code
    § 1780 ................................................................................................................... 15
    § 1791.1(a)(2) ....................................................................................................... 23

Cal. Com. Code § 2607(3)(A) ...................................................................................... 21


**OTHER AUTHORITIES**

1-1200 CACI 1243 ....................................................................................................... 22

W. Stern, Unfair Business Practices & False Advertising: Bus. & Prof. Code 17200
    § 10:29.1 (The Rutter Group 2012) ................................................................. 9 n.5

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on May 4, 2012, at 9 a.m., or as soon thereafter as the

4

matter may be heard, in the United States District Court, Northern District of California, San Jose

5

Division, located at 280 South 1st Street, San Jose, CA 95113, Courtroom 6, before the

6

Honorable Ronald M. Whyte, Defendant Apple Inc. ("Apple") will, and hereby does, move the

7

Court for an order dismissing plaintiff's First Amended Complaint ("FAC") pursuant to Rules

8

9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based on the

9

Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities,

10

Apple's Request for Judicial Notice and the Declaration of Stuart C. Plunkett in support thereof,

11

and other related documents filed in connection with this motion, the papers and records on file in

12

this action, and such other written and oral argument as may be presented to the Court.

13

**ISSUES TO BE DECIDED**

14

1.      Whether plaintiff lacks standing because he fails to allege injury in fact.

15

2.      Whether plaintiff lacks standing to assert claims based on iPhone models he did

16

not purchase.

17

3.      Whether plaintiff's UCL claim should be dismissed for failure to satisfy Rule 9(b)

18

and on choice-of-law grounds.

19

4.      Whether plaintiff's CLRA claim should be dismissed for failure to satisfy

20

Rule 9(b) and on choice-of-law grounds.

21

5.      Whether plaintiff's WCPA claim should be dismissed for failure to satisfy

22

Rule 9(b).

23

6.      Whether plaintiff's claims for breach of contract and breach of the duty of good

24

faith and fair dealing should be dismissed because plaintiff fails to allege the existence of a

25

contract or any contractual term related to the signal meter which Apple supposedly breached.

26

7.      Whether plaintiff's claims for breach of express and implied warranties should be

27

dismissed because plaintiff fails to allege that his iPhone did not function properly; because

28

plaintiff failed to give notice; because the FAC's allegations do not demonstrate a breach of any

1    implied warranty; and because Apple provided a warranty repair for the alleged signal meter

2    issue.

3            8.      Whether plaintiff's claim under the Magnuson-Moss Warranty Act should be

4    dismissed because plaintiff fails to allege facts showing breach of express or implied warranties

5    and because plaintiff failed to give notice.

6            9.      Whether plaintiff's restitution claim should be dismissed because restitution, as

7    alleged in the FAC, is not an independent cause of action.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff's lawsuit is an opportunistic attempt to exploit a July 2, 2010 letter in which Apple announced a software update to the iPhone's signal meter.  As is evident from the allegations of the First Amended Complaint ("FAC"), there is nothing wrong with the iPhone's performance; rather, plaintiff seeks to parlay Apple's letter into a "gotcha" lawsuit.  The FAC is defective for lack of standing as well as on numerous other grounds and should be dismissed.

Most fundamentally, plaintiff has not alleged and cannot allege injury and thus lacks Article III standing.  Plaintiff's lawsuit ignores the nature of the signal meter.  Like the gauge on a car that reports ambient air temperature, the signal meter merely reports the strength of the signal received from the network, nothing more.  The car's gauge only reports, but cannot affect, ambient temperature.  Similarly, the signal meter only reports; it does not affect signal strength. It cannot cause dropped calls or poor call quality, or otherwise affect the phone's performance.

Plaintiff's theory of injury is that the signal meter "overstated" network signal strength and thus "deceived" plaintiff and the purported class members into not returning their phones. But that theory is completely implausible.  If plaintiff actually experienced poor call quality or poor phone performance, he knew it, and he could and would have returned his phone for a full refund, irrespective of what the signal meter said.  He does not allege he did so.

Grasping for some other injury theory, plaintiff attempts to concoct a *post*-sale theory of reliance and resulting injury.  Plaintiff makes the implausible assertion that, had the signal meter been accurate, he "would have refrained from making [certain] calls or expected a higher likelihood of such calls being dropped."  (FAC ¶ 54)  Even assuming arguendo that this post-sale theory of reliance and injury could be actionable, plaintiff does not and cannot allege that the signal meter caused him concrete injury.  If plaintiff's supposedly frustrated "expectations" about the "likelihood" of a call being dropped were sufficient to satisfy constitutional standing requirements, federal courts would be flooded with meritless lawsuits.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992) (Article III requires "concrete and particularized" injury).

Finally, plaintiff's theory that his iPhone lost resale value in a supposed "secondary market" is not only speculative, it founders on the fact that plaintiff does not allege that he ever *tried* to sell his iPhone in this supposed secondary market.  The purpose of Article III is to ensure that courts hear only real cases and controversies involving "legally protected" interests.  *Id.* Plaintiff cannot meet that threshold requirement.

Plaintiff's claims fail on numerous other grounds, as well.  Plaintiff makes a strained attempt to avoid his standing problems by changing the emphasis of the FAC to a claim that the iPhone User Guide constituted a "contract" respecting the signal meter which Apple allegedly "breached."   That claim is frivolous.  Plaintiff does not allege that he personally ever *saw* the User Guide.  Further, the FAC makes clear that consumers access the User Guide *after* purchasing their iPhones (FAC ¶ 20).  Thus, the contents of the User Guide could not constitute pre-sale contractual terms that plaintiff "accepted" when he purchased the phone.

Plaintiff's consumer protection claims — based on his purported reliance on alleged representations and omissions regarding the signal meter — are equally meritless.  Most basically, plaintiff does not allege a single representation or omission Apple made about the signal meter.  Plaintiff's nonspecific, boilerplate allegations regarding Apple's marketing are identical to those that the Ninth Circuit and courts in this District have repeatedly found insufficient under Rule 9(b).  These claims fail on several other grounds as well.

Plaintiff's warranty and restitution claims are similarly baseless, as set forth herein.  Because plaintiff cannot cure the defects in his complaint and because plaintiff has already had one opportunity to amend, the Court should dismiss the FAC with prejudice.[1]

## FACTUAL BACKGROUND

In June 2007, Apple launched its first cellular telephone, the iPhone 2G.  The iPhone 2G was the first mobile phone to combine multiple products into one handheld device — a mobile phone, an iPod music player, and an Internet communication device.  The original iPhone

---

[1] Plaintiff represented to the Court that the FAC would include an additional plaintiff to support the additional claims.  The FAC continues to include only Donohue as a named plaintiff.

1   operated on AT&T Mobility's ("ATTM") 2G — or EDGE — network.  In July 2008, Apple

2   launched its second-generation iPhone, the iPhone 3G, and discontinued sales of the original

3   iPhone 2G.  The iPhone 3G, and the next two versions of the iPhone — the iPhone 3GS and

4   iPhone 4 — are supported by ATTM's third-generation or "3G" network, as well as the 2G

5   network.  This lawsuit relates to Apple's iPhone 2G, 3G, 3GS, and 4.

6          All cellular phones, including all iPhones, are equipped with a signal meter that displays

7   the strength of the signal from the wireless network.  (FAC ¶ 17)  The signal meter uses a formula

8   to calculate how many "bars" of signal strength are displayed on the iPhone.  (*Id.*)  In July 2010,

9   Apple released a public letter addressing media reports about signal attenuation issues

10  experienced when some customers gripped the iPhone 4 in a certain manner.  (FAC, Ex. 1)  In the

11  July 2 "Letter from Apple Regarding iPhone 4," Apple announced that it planned to issue a

12  software update to increase the accuracy of the signal-strength display for iPhone models that

13  operated on ATTM's 3G network.  (*Id.*)

14         Apple issued that update on July 15, 2010, twenty-two days after the iPhone 4 was

15  launched.  (FAC ¶ 45)  The software update changed the formula calculating how many bars of

16  signal strength are shown, as discussed in the July 2 letter.  (FAC, Ex. 1)  It had no effect on the

17  actual signal strength and quality from ATTM's network.  (*See, e.g.*, FAC ¶ 16 ("ability to

18  establish and maintain a network connection and to use above-described iPhone features is a

19  function of the level of network reception," and the "strength of the network reception varies"))

20         Plaintiff alleges that he purchased an iPhone in January 2010 "to replace his previous

21  iPhone."  (FAC ¶ 51)  Plaintiff does not dispute that the July 2010 update addressed the alleged

22  issues respecting the signal meter on his iPhone (FAC ¶¶ 45-46), and thus his claims were fully

23  addressed within the one-year warranty period.  Plaintiff does not specify the model of either

24  iPhone he allegedly owned, and does not allege when or where he purchased his first iPhone.

25

26

27

28

1    Nonetheless, plaintiff purports to represent a class of "[a]ll persons who purchased an iPhone at

2    retail in the United States at any time on or before July 14, 2010."  (FAC ¶ 9)[2]

3            Plaintiff alleges that in purchasing his iPhone, he "relied upon Apple's omission,

4    concealment and representation" regarding the signal meter.  (FAC ¶ 154)  Plaintiff does not

5    allege any misrepresentations, however.  (*See* FAC ¶ 146)  Plaintiff also claims that Apple

6    breached a "contract" with him by providing an allegedly inadequate signal meter.  (FAC ¶¶ 85-

7    91)  Plaintiff alleges that the terms of the "contract" were contained in the iPhone User Guide,

8    which supposedly became part of the purchase "contract" for the iPhone.  (FAC ¶ 86)  However,

9    plaintiff does not allege that he ever saw the User Guide, let alone that he saw it prior to purchase.

10   Finally, plaintiff alleges that the signal meter rendered the iPhone defective, resulting in breach of

11   express and implied warranties.  (FAC ¶¶ 111-130)  But plaintiff failed to give notice as required

12   for his warranty claims, and ignores the fact that if there was a defect, it was correctable under

13   warranty.[3]

14                                    **LEGAL STANDARD**

15           A motion to dismiss should be granted if the plaintiff is unable to articulate facts

16   establishing a claim to relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662,

17   129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

18   *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *Wilson v. Hewlett-*

19   *Packard Co.*, No. 10-16249, 2012 U.S. App. LEXIS 3174, at *7 (9th Cir. 2012) (quoting

20   _____

21           [2] A previous case filed in California state court included claims regarding the iPhone
     signal meter.  *Patel et al. v. Apple Inc.*, Case No. 1-10-CV-16772, Dkt No. 38 (Feb. 15, 2011).
22   Apple's demurrer in that case was granted in part and denied in part.  *Id.*  Because that case was
     in state court, the Rule 8 standard articulated by the United States Supreme Court in *Twombly* and
23   *Iqbal* did not apply, nor did the requirements of Rule 9(b) and Article III.  Moreover, because the
     complaint was brought by two California plaintiffs on behalf of a purported California class, the
24   choice-of-law issues discussed herein did not arise.

25           [3] Plaintiff asserts eight causes of action:  (1) breach of contract and breach of the duty of
     good faith and fair dealing; (2) breach of implied warranty; (3) breach of express warranty;
26   (4) violation of the Magnuson-Moss Warranty Act (the "MMWA"); (5) violation of the Unfair
     Competition Law, California Business & Professions Code section 17200 (the "UCL");
27   (6) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 (the "CLRA");
     (7) violation of the Washington Consumer Protection Act, RCW 19.86 et seq. (the "WCPA"); and
28   (8) restitution.  (FAC ¶¶ 84-184)

1  *Twombly*).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the

2  elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S.

3  at 555).  The complaint must allege facts which, when taken as true, raise more than a speculative

4  right to relief.  *Twombly*, 550 U.S. at 555.  The facts must "nudge[] [the] claims across the line

5  from conceivable to plausible."  *Id.* at 570.  The Court need not accept as true conclusory

6  allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted

7  deductions of fact.  *See Oestreicher v. Alienware Corp.,* 544 F. Supp. 2d 964, 968 (N.D. Cal.

8  2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)), *aff'd*, 322

9  Fed. App'x 489 (9th Cir. 2009).

10       A motion to dismiss based on Article III standing is properly raised under Rule 12(b)(1).

11  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The burden of proof on a

12  Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *See Kokkonen v. Guardian*

13  *Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also In re Actimmune Mktg. Litig.*, No. C 08-

14  02376 MHP, 2010 U.S. Dist. LEXIS 90480, at *14 (N.D. Cal. Aug. 31, 2010), *aff'd*, 2011 U.S.

15  App. LEXIS 26054 (9th Cir. Cal. Dec. 30, 2011).  "Rule 12(b)(1) jurisdictional attacks can be

16  either facial or factual."  *White*, 227 F.3d at 1242.  Where the challenge to jurisdiction is facial,

17  the Court applies a standard similar to that applied to a Rule 12(b)(6) motion.  *Wolfe v.*

18  *Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

19                                     **ARGUMENT**

20  **I.**     **PLAINTIFF LACKS STANDING**

21        **A.**     **Plaintiff Lacks Article III and Statutory Standing**

22       Article III of the United States Constitution requires named plaintiffs purporting to

23  represent a class to "allege and show that they personally have been injured, not that injury has

24  been suffered by other, unidentified members of the class to which they belong and which they

25  purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citation omitted).  Plaintiff's

26  alleged "injury in fact" must involve "an invasion of a legally protected interest which is (a)

27  concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*,

28

1   504 U.S. at 559-60 (quotations and citation omitted).  Article III ensures that courts hear only real

2   cases and controversies involving "legally protected" interests.  *Id.*

3       Similarly, each of plaintiff's causes of action requires that plaintiff plead injury.  *In re*

4   *iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865, at *44 (N.D.

5   Cal. Sept. 20, 2011) (injury-in-fact required for UCL standing); *id.* at *31-32 (CLRA claim fails

6   where plaintiffs fail to allege damage); *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 416

7   (2004) (an element of a breach of warranty claim is that plaintiff suffered injury, damage, loss, or

8   harm); *Das v. WMC Mortg. Corp.*, No. 10-CV-00650-LHK, 2011 U.S. Dist. LEXIS 136740, at

9   *38-39 (N.D. Cal. Nov. 28, 2011) (damage to plaintiff required to assert breach of contract

10  claim); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785

11  (Wash. 1986) (injury is required under the WCPA); *Harmon v. Hilton Group*, No. C-11-03677

12  JCS, 2011 U.S. Dist. LEXIS 136064, at *32-33 (N.D. Cal. Nov. 28, 2011) (claim for restitution

13  lies only where benefit retained is at another's expense).

14      Plaintiff fails to plead injury.  The basis of plaintiff's lawsuit is his allegation that the

15  iPhone signal meter overstated signal strength prior to the 2010 software upgrade.  (FAC ¶ 1)  But

16  plaintiff concedes, as he must, that the accuracy of the signal meter did not affect call quality or

17  service, because the signal meter is merely that — a "meter" or indicator of the strength of the

18  signal being received from the wireless carrier.  (FAC ¶¶ 16, 17, 19, 53)  It cannot affect the

19  actual strength of the signal, the iPhone's performance, or its call quality.  It cannot cause injury.

20      Plaintiff attempts to avoid his lack of standing by concocting a theory of injury that is

21  inherently implausible.  Plaintiff asserts that he and the members of the purported class were

22  deceived by the signal meter, which allegedly resulted in them not returning their iPhones during

23  the 30-day return period despite network reception, call quality, and dropped call issues.  (FAC

24  ¶ 27)  Plaintiff's theory does not "nudge[] [the] claims across the line from conceivable to

25  plausible." *Twombly*, 550 U.S. at 570.  If plaintiff experienced network reception issues such as

26  dropped calls, calls fading in and out, or poor call quality, *he knew it*; the signal meter could not

27  disguise his actual experience.  Yet plaintiff chose *not* to return his iPhone.

28

Plaintiff's conclusory allegation that, had he known about the alleged signal meter issues, that knowledge would have "affected the decision to purchase his iPhone or return it within 30 days" (FAC ¶ 60) is similarly implausible.  Plaintiff alleges that his iPhone "exhibited signs of the defective and inaccurate reporting" of the signal meter and "portrayed more reception than actually existed" (FAC ¶¶ 53-54), yet he did not return his iPhone.  Further, the FAC alleges that plaintiff owned a prior iPhone and that earlier iPhones had the same signal meter issue, yet plaintiff nonetheless bought a second iPhone.  Finally, plaintiff makes no allegation that he purchased the iPhone because of the signal meter's readings or because of any representation by Apple regarding the signal meter.  Plaintiff thus fails to plead injury.  *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555 (2011) (plaintiff failed to plead injury in fact where alleged misrepresentation did not cause consumer to purchase product).

Plaintiff's attempt to concoct a *post*-sale theory of reliance and injury is even more strained.  Plaintiff alleges that when using his iPhone after purchase, had the signal meter been more accurate, he "would have refrained from making . . . calls or expected a higher likelihood of such calls being dropped" (FAC ¶ 54).  Not only is the allegation implausible on its face, plaintiff does not even attempt to allege how he was injured, nor can he, by making the calls or by his failure to "expect" a higher level of dropped calls.  Plaintiff had already paid for the phone.  Plaintiff's ability to use his iPhone was what it was, and calls that were allegedly dropped would still have been dropped, irrespective of how the signal meter read.  If the phone's performance was contrary to plaintiff's "expectations," those "expectations" were contradicted as soon as he used the phone, well within the return period.  Indeed, plaintiff concedes that he purchased his iPhone to replace an iPhone, so he had actual experience of the iPhone's performance *before* his purchase and he *chose* to purchase another one.  Plaintiff thus fails to allege "concrete and particularized" injury.  *See Lujan*, 504 U.S. at 559-60.

Plaintiff's final injury theory respecting the supposed "secondary market" is the most tenuous of all.  Plaintiff does not allege that he ever *attempted* to sell his iPhone in the supposed secondary market (or that he did so in the approximately six months before the update resolved

1   the issue).  Nor does he allege any facts establishing that the alleged signal meter issue affected

2   his iPhone's value in the supposed secondary market.

3       In addition, Article III standing requirements include "a causal connection between the

4   injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the

5   challenged action of the defendant.'"  *Lujan*, 504 U.S. at 560 (citation omitted); *see also*

6   *Birdsong v. Apple Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009).[4]  Plaintiff cannot satisfy this

7   requirement.  If plaintiff was in fact injured by dropped calls or other reception issues, by his own

8   admission that "injury" was not caused by the signal meter.  (FAC ¶¶ 53-54)  And the alleged

9   "injury" could readily have been avoided by returning the phone within 30 days of purchase or by

10  tendering the allegedly defective iPhone during the one-year warranty period.

**B.    Plaintiff Lacks Standing to Assert Claims Based on iPhone Models that He Did Not Purchase**

13      Plaintiff lacks standing to assert claims regarding the iPhone 4 and possibly other models.

14  Plaintiff concedes that he has owned only two iPhones (*i.e.*, at most two different models of the

15  iPhone), but purports to represent a class of purchasers of four iPhone models.  Plaintiff alleges

16  that he "purchased his [unspecified] iPhone . . . in approximately January 2010, . . . to replace his

17  previous [unspecified] iPhone."  (FAC ¶ 51)  Based on the timing of plaintiff's alleged purchase

18  in January 2010, plaintiff could not have bought an iPhone 4 at that time, or an iPhone 2G.  Yet

19  plaintiff seeks to bring claims relating to the iPhone 4 model and to at least one other iPhone

20  model he did not own.  Plaintiff has standing to assert claims only with respect to the iPhone

21  models he purchased:  he cannot assert claims on behalf of a class of which he is not a member.

22  *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 U.S. Dist. LEXIS 6371,

24      [4] The statutes on which plaintiff's claims are based similarly require that plaintiff
demonstrate a causal link between his alleged injury and defendant's conduct.  *See, e.g., In re
Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("*Tobacco II*") (UCL requires that named plaintiff
demonstrate reliance and causation); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF
(HRL), 2009 U.S. Dist. LEXIS 98532, at *25 (N.D. Cal. Oct. 13, 2009) (same); *Meyer v. Sprint
Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) (CLRA requires proof of damage caused by alleged
wrongful conduct); *Minnick v. Clearwire US, LLC*, 683 F. Supp. 2d 1179, 1188 (W.D. Wash.
2010) (causation required for WCPA claim).

1  at *7-8 (N.D. Cal. Jan. 10, 2011) (named plaintiff's claims regarding product he did not purchase

2  dismissed); *Johns v. Bayer Corp*., No. 09CV1935 DMS (JMA), 2010 U.S. Dist. LEXIS 10926, at

3  *12-13 (S.D. Cal. Feb. 9, 2010) (same).

4  **II.     THE FAC IGNORES INSURMOUNTABLE CHOICE-OF-LAW ISSUES**

5          Plaintiff alleges that he is a resident of Washington State who purchased the iPhone at

6  issue in Seattle, Washington.  (FAC ¶¶ 5, 51)  The Ninth Circuit recently held in *Mazza v. Am.*

7  *Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), that under the California choice-of-law

8  principles applicable here, a plaintiff's "consumer protection claim should be governed by the

9  consumer protection laws of the jurisdiction in which the transaction took place."  666 F.3d at

10  594.  Applying California's "governmental interests" choice-of-law standard, the Ninth Circuit

11  reasoned that "each state has an interest in setting the appropriate level of liability for companies

12  conducting business within its territories" (*id*. at 592) and that the "place of the wrong has the

13  predominant interest" (*id*. at 593 (quotations and citation omitted)).  Thus, it concluded, even

14  though the defendant was a California corporation with its principal place of business in

15  California, the law of the state where the purchase occurred governed.  *Id*. at 594.  Accordingly,

16  non-California plaintiffs could not pursue claims under the UCL or the CLRA.  Here, because

17  plaintiff purchased the iPhone at issue in Washington, plaintiff's claims under the UCL and the

18  CLRA should be dismissed.[5]

19  **III.    RULE 9(b) REQUIRES DISMISSAL OF PLAINTIFF'S CONSUMER
          PROTECTION CLAIMS**
20

21       **A.     Rule 9(b) Applies to All Claims that Allege a Unified Course of Fraud**

22          "It is well-settled that the Federal Rules of Civil Procedure apply in federal court,

23  'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the

24  substantive law at issue is state or federal.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

25  _____

26          [5] Moreover, the CLRA is actionable only by California residents.  *See Nordberg v.*
   *Trilegeant Corp.*, 445 F. Supp. 2d 1082, 1096 (N.D. Cal. 2006); *see also* W. Stern, Unfair
27  Business Practices & False Advertising: Bus. & Prof. Code 17200 § 10:29.1 (The Rutter Group
   2012).  Accordingly, since plaintiff Donohue neither resides nor purchased in California (FAC
28  ¶¶ 5, 51), he may not assert CLRA claims.

1  Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003));

2  *Tietsworth*, 2009 U.S. Dist. LEXIS 98532, at *10-11.  Thus, Federal Rule of Civil

3  Procedure 9(b) applies in diversity cases, including those, like the present action, brought under

4  the Class Action Fairness Act ("CAFA").  *Kearns*, 567 F.3d at 1125.

5        The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard

6  applies to all causes of action that are based on allegations of "a unified course of fraudulent

7  conduct," whether affirmative misrepresentations or omissions.  *Id.* at 1127.   Rule 9(b) requires

8  that "a party must state with particularity the circumstances constituting fraud" or mistake.  *Id.* at

9  1126.  Conclusory allegations of fraud are insufficient.  *Vess*, 317 F.3d at 1106.  "Averments of

10  fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

11  charged," *Kearns*, 567 F.3d at 1124, as well as the circumstances indicating fraudulent conduct.

12  *Vess*, 317 F.3d at 1106.

13        Plaintiff's UCL claims are premised on an alleged unified course of fraudulent conduct.

14  Plaintiff alleges that Apple "implemented a business practice of conveying misleading messages

15  . . . about the iPhone's functionality, capability, and limitations."  (FAC ¶ 146)  Plaintiff alleges

16  that Apple "continued to misrepresent the signal strength via depictions of the number of bars on

17  the [iPhone's] Signal Strength Meter."  (FAC ¶ 147)  Plaintiff further alleges that it was Apple's

18  "business practice" to conceal the supposed unreliability of the signal meter (FAC ¶¶ 148-149)

19  and that plaintiff "relied upon Apple's omission, concealment and representation" (FAC ¶ 154).

20  Plaintiff makes the same allegations to support his claim for violation of the CLRA.  (FAC

21  ¶¶ 163-164)  Accordingly, *Kearns* requires plaintiff to satisfy the heightened pleading

22  requirements of Rule 9(b) to state UCL and CLRA claims.  Likewise, plaintiff's claim for

23  violation of the WCPA, premised on Apple's purported fraudulent conduct (FAC ¶ 172), is also

24  subject to Rule 9(b).  *See, e.g., Fid. Mortg. Corp. v. Seattle Times Co*., 213 F.R.D. 573, 575

25  (W.D. Wash. 2003).

26        *Kearns* applies not only to plaintiff's claim under the UCL's "fraudulent" prong, but also

27  to his claims, premised on the same factual allegations, under the "unlawful" and "unfair" prongs

28  of the UCL.  (*See, e.g.*, FAC ¶¶ 134, 137, 140, 144 (alleging misrepresentations and omissions));

1    *see In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*, No. 10-

2    02712-CJC (RNBx), 2011 U.S. Dist. LEXIS 110206, at *18-19 (C.D. Cal. Sept. 12, 2011)

3    (relying on *Kearns* to apply Rule 9(b) to all three UCL prongs where claims related to allegedly

4    defective brakes in vehicles); *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011

5    U.S. Dist. LEXIS 89379, at *9 (N.D. Cal. Aug. 10, 2011)  (allegations regarding printers'

6    "inherent design defect" and resultant false advertisement "describe a unified course of fraudulent

7    conduct, and the claims based on this conduct are subject to the heightened pleading requirements

8    of Rule 9(b)").

9          **B.     Plaintiff Does Not Satisfy Rule 9(b)**

10         Plaintiff fails to meet the requirements of Rule 9(b).  The FAC contains not a single

11   allegation as to the "who, what, when, where, and how" of the alleged fraud.  Plaintiff does not

12   point to any representation regarding the signal meter.  Plaintiff never identifies what advertising

13   or other representation he saw — including whether he ever saw representations regarding the

14   signal meter, what they said, when he saw them, whether he relied on them, or how they caused

15   injury.  Instead, plaintiff offers only the bare legal conclusion that he was "injured in fact" and

16   "lost money or property."  (FAC ¶ 158)  Such conclusions are insufficient to state a claim.  *See*

17   *Oestreicher*, 544 F. Supp. 2d at 968; *Wilson*, 2012 U.S. App. LEXIS 3174, at *16-17; *In re*

18   *iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *14-18.

19          **1.     Plaintiff Fails to Allege the Specific Representations He Was Exposed
                     to as Required to State Consumer Protection Claims**
20

21         Plaintiff's consumer protection claims fail because plaintiff does not plead any

22   advertisement or other actionable representation or omission by Apple regarding the iPhone's

23   signal meter.  A plaintiff must identify and allege that he was exposed to a specific representation

24   that is claimed to be deceptive to state a claim under the UCL and the CLRA.  *Cohen v. DirecTV,*

25   *Inc.*, 178 Cal. App. 4th 966, 978-79 (2009); *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622,

26   631 (2010); *Mazza*, 666 F.3d at 596; *Baltazar v. Apple Inc.*, No. CV-10-3231-JF, 2011 U.S. Dist.

27   LEXIS 13187, at *10-11 (N.D. Cal. Feb. 10, 2011).  Similarly, under the WCPA, plaintiff's claim

28   must be dismissed because he does not plead any advertising, marketing, or representation related

1   to the signal meter.  *See, e.g., Minnick*, 683 F. Supp. 2d at 1188; *Michael v. Mosquera-Lacy*,

2   165 Wn.2d 595, 603 (Wash. 2009); *Contos v. Wells Fargo Escrow Co., LLC*, No. C08-838Z,

3   2010 U.S. Dist. LEXIS 77225 (W.D. Wash. July 1, 2010).

4          In *Kearns*, the plaintiff alleged that defendant Ford misrepresented its Certified Pre-

5   Owned ("CPO") Vehicle Program through a national televised marketing campaign and written

6   sales materials.  *Kearns*, 567 F.3d at 1126.  Affirming the trial court's dismissal of UCL and

7   CLRA claims, the Ninth Circuit explained:

8              Nowhere in the [Third Amended Complaint] does Kearns specify
               what the television advertisements or other sales material
9              specifically stated.  Nor did Kearns specify when he was exposed to
               them or which ones he found material.  Kearns also fails to specify
10             which sales materials he relied upon in making his decision to buy a
               CPO vehicle. . . .  Kearns failed to articulate the who, what, when,
11             where, and how of the misconduct alleged.

12  *Id.  See also Chavez v. Nestle USA, Inc.*, No. CV 09-9192-GW (CWx), 2011 U.S. Dist. LEXIS

13  9773, at *24 (C.D. Cal. Jan. 10, 2011) (dismissing fraud-based claims where complaint did not

14  identify "what specific misrepresentations [plaintiffs] allegedly saw, when they viewed them, or

15  how they relied upon them").[6]

16         Plaintiff does not meet this standard.  The FAC contains the following paragraph

17  purporting, but utterly failing, to describe the supposed misrepresentations:

18             Apple, in connection with its marketing and sale of its iPhones to
               Plaintiff and the Class, and through iPhone product packaging,
19             through sample iPhones placed on display, through specification
               literature about the phones displayed at retail stores, through
20             warranties and literature that come with every iPhone, and through
               its multimedia marketing campaign, implemented a business
21             practice of conveying misleading messages, both at the time of sale,
               and beyond and prior thereto, about the iPhone's functionality,
22             capability, and limitations.

23

24  _____

25         [6] *See also Minnick*, 683 F. Supp. 2d at 1188 (dismissing WCPA claim where "[n]one of
    the Plaintiffs identif[ied] the relied-upon statements and, therefore, [they failed to] allege[] a
26  plausible basis to identify CPA causation"); *Fid. Mortg. Corp.*, 213 F.R.D. at 575 (dismissing
    WCPA claim where plaintiff vaguely alleged the statements it claimed to be false, when and
27  where the information was published, and who was responsible, but still did not sufficiently
    allege the "particulars" of the fraudulent statements).
28

1    (FAC ¶ 146)  These allegations fail to identify a single statement regarding the signal meter.

2    They are indistinguishable from the allegations the Ninth Circuit held to be inadequate in *Kearns*.

3    The FAC does not allege that Apple made *any* representations regarding the signal meter or the

4    iPhone's signal strength in advertising or marketing materials.  Further, as in *Kearns*, the FAC

5    never identifies specific advertising or other sales materials in which the supposed "messages"

6    appeared.  Indeed, it does not even indicate what the supposed "messages" *said*; whether they

7    related to the signal meter or signal strength in any way; whether and when plaintiff saw them;

8    and whether he relied on them.  These vague and generic allegations do not come close to

9    satisfying Rule 8, much less the heightened Rule 9(b) standard.

10          Plaintiff's claim that the signal strength meter's reading itself constituted a

11   misrepresentation (*see, e.g.*, FAC ¶ 147) is meritless on its face.  Under plaintiff's logic, the

12   reading on any device indicator would constitute an actionable "representation" by the

13   manufacturer.  Thus, if a car's dashboard clock were fast or its external temperature gauge were a

14   few degrees too low, the manufacturer would have engaged in a "misrepresentation."  That

15   plainly is not the law.

16          Plaintiff's suggestion that "a sample iPhone display at the Apple store" (FAC ¶ 147)

17   constituted a misrepresentation about the signal meter is equally unavailing.  Plaintiff does not

18   allege that he saw or relied upon the "display" when he made his purchase; he alleges only that an

19   iPhone "appeared" on a "sample display at the Apple store . . . in Seattle, Washington."  (FAC

20   ¶ 147)  The FAC does not allege what the signal meter on the "sample iPhone display" depicted

21   or even that it showed a signal at all.  In any event, plaintiff concedes that an iPhone must be

22   purchased, activated, and turned on before it can show a signal (FAC ¶¶ 17-18).  Accordingly, the

23   signal meter on an iPhone "display" would not convey actual network strength, nor could it

24   misrepresent network strength.

25          Nor has plaintiff alleged actionable omissions.  To be actionable, an omission must be

26   "contrary to a representation actually made by the defendant, or an omission of a fact the

27   defendant was obliged to disclose."  *Baltazar*, 2011 U.S. Dist. LEXIS 13187, at *11 (quoting

28   *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)) (because "[p]laintiffs

1   [did] not identify any affirmative representation concerning the subject of any alleged omissions,

2   nor [did] they identify any legal obligation on the part of Apple to disclose the material

3   information it allegedly failed to disclose," CLRA claim based on omissions failed); *Wilson*,

4   2012 U.S. App. LEXIS 3174, at *9 ("California courts have . . . rejected a broad obligation to

5   disclose"); *Tietsworth*, 2009 U.S. Dist. LEXIS 98532, at *11-12 (applying test to fraudulent

6   concealment claim based on alleged omissions); *see also Vitt v. Apple Computer, Inc.*, No. 10-

7   55941, 2012 U.S. App. LEXIS 4419, at *8 (9th Cir. Cal. Feb. 28, 2012) (rejecting plaintiff's duty

8   to disclose argument).  Rule 9(b) applies with equal force to alleged omissions.  *Kearns*, 567 F.3d

9   at 1127 (because "nondisclosure is a claim for misrepresentation in a cause of action for fraud, it .

10  . . must be pleaded with particularity under Rule 9(b)"); *Hovsepian v. Apple Inc.*, No. 08-5788 JF

11  (PVT), 2009 U.S. Dist. LEXIS 117562, at *7-14 (N.D. Cal. Dec. 17, 2009) (relying on *Kearns* to

12  dismiss CLRA and UCL allegations based on alleged material misrepresentations and omissions

13  related to Apple's iMac).

14          Plaintiff has not met these requirements.  As discussed, plaintiff has not alleged that Apple

15  made *any* representation regarding the subject of the alleged omission — signal meter or signal

16  strength.  In the absence of such a representation, there can be no actionable omission.  *Baltazar*,

17  2011 U.S. Dist. LEXIS 13187, at *11.[7]  Accordingly, plaintiff's consumer protection claims fail

18  as a matter of law.

19

20

21

22          [7] Nor does plaintiff point to any other basis for an omission-based claim.  Plaintiff
    contends that Apple concealed the existence of the signal meter issue, but does not support this
23  conclusory allegation with the requisite "who, what, when, where, and how."  (*See* FAC ¶ 134
    ("Apple, . . . by failing to disclose and concealing the Meter defect, . . . violated applicable law."))
24  Bare legal conclusions such as those in the FAC cannot create a duty to disclose.  *See Hovsepian
    v. Apple Inc.*, No. 08-5788 JF (PVT), 2009 U.S. Dist. LEXIS 80868, at *9 (N.D. Cal. Aug. 21,
25  2009) (generalized allegations of concealment, which included denial of existence of defect, did
    not meet Rule 9(b) and were insufficient to create a duty to disclose); *see also Tietsworth*, 2009
26  U.S. Dist. LEXIS 98532, at *21 (dismissing "unlawful" prong UCL claim based on violation of
    California Civil Code §§ 1572, 1709, 1710, like the claims herein, because plaintiff failed to
27  allege the elements of fraud with sufficient particularity); *see also Wilson*, 2012 U.S. App. LEXIS
    3174, at *28.

28

## 2. Plaintiff Fails to Allege Reliance and Causation

Plaintiff's consumer protection claims fail for an additional and independent reason: they do not allege facts that establish reliance or causation. The UCL limits relief to a "person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17204, 17535. The California Supreme Court has interpreted this language as "impos[ing] an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *Tobacco II*, 46 Cal. 4th at 326. Plaintiff "must allege with specificity that Defendants' alleged misrepresentations [or omissions]: 1) were relied upon by the named plaintiffs; 2) were material; 3) influenced the named plaintiffs' decisions to purchase [an iPhone]; and 4) were likely to deceive members of the public." *Tietsworth*, 2009 U.S. Dist. LEXIS 98532, at *25 (citing *Tobacco II*, 46 Cal. 4th at 326-28); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).

The CLRA's actual reliance and causation requirements similarly require dismissal. The CLRA affords relief only to California consumers "who suffer[] . . . damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." Cal. Civ. Code § 1780; *Meyer*, 45 Cal. 4th at 641. Because "[r]elief under the CLRA is specifically limited to those who suffer damage," each individual plaintiff must adequately allege both reliance and causation. *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809 (2007). "[P]laintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions." *Id.* at 810.

Similarly, to establish a private cause of action under the WCPA, plaintiff must demonstrate "[a] causal link . . . between the unfair or deceptive acts and the injury suffered by plaintiff." *Hangman Ridge Training Stables*, 105 Wn.2d at 793. "In order to demonstrate the requisite causal link [under the WCPA], plaintiffs must demonstrate their reliance upon the false advertisement in purchasing the defendant's goods or services." *Homchick v. Allstate Ins. Co.*, No. C04-5639 RJB, 2005 U.S. Dist. LEXIS 25645, at *12 (W.D. Wash. Oct. 19, 2005). "A plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of*

1    *Wash., Inc.*, 162 Wn.2d 59, 84 (Wash. 2007).  Because the FAC does not allege facts establishing

2    that plaintiff relied on alleged representations or omissions to his detriment, plaintiff's claim

3    under the WCPA must be dismissed.  *See In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d

4    1288, 1312 (N.D. Cal. 2008) (dismissing WCPA claim because "[u]nder the WCPA, the

5    causation element operates in the same manner as the materiality requirement for omissions under

6    the CLRA, in that liability under both is predicated on whether a consumer 'would have . . .

7    behaved differently'," noting that "[p]laintiffs make no allegations that their choice to purchase

8    an iPhone and enroll in ATTM's service plan would have been different had Defendants made the

9    relevant disclosures") (citation omitted).

10        Plaintiff here does not allege that he was exposed to any representation or omission

11   regarding the signal meter or signal strength prior to purchasing his iPhone.  Moreover, he

12   expressly concedes that he did not see the iPhone signal meter prior to purchase.  He admits that

13   the signal meter is only visible when the iPhone is turned on and cellular service is activated after

14   purchase.  (FAC ¶ 18)  Thus, even if the signal meter constitutes a representation (which, as

15   discussed in section III. B. 1., *supra*, it does not), plaintiff could not have relied on it — or on any

16   other Apple representation regarding the signal meter since plaintiff has alleged no such

17   representations — in deciding to purchase his iPhone.[8]

18        Rather than allege facts, as required by Rule 8 and Rule 9(b), plaintiff puts forth only a

19   generic legal conclusion regarding reliance.  (FAC ¶ 154 ("Plaintiff reasonably relied upon

20   Apple's omission, concealment and representation as set forth above."))  This allegation does not

21   meet the basic requirements of Rule 8, and clearly cannot satisfy the more stringent requirements

22   of Rule 9(b).  *See Iqbal*, 129 S. Ct. at 1949; *see also Laster v. T-Mobile USA, Inc.*, 407 F. Supp.

23   2d 1181, 1194 (S.D. Cal. 2005) (dismissing UCL claim where "none of the named Plaintiffs

24   allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they

25

26        [8] *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1006-07
     (S.D. Cal. 2011) (plaintiffs' failure to allege the timing of their exposure to representations in
27   relation to their purchase, specifically whether the exposure occurred before purchasing the
     product, was fatal to claims under various states' consumer protection laws).

28

1   entered into the transaction *as a result* of those advertisements"), *abrogated on other grounds by*

2   *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740 (2011).

3          Similarly, plaintiff's boilerplate allegation that, had he and members of the purported class

4   known about the alleged issues with the signal meter, "they would have attached importance to

5   and considered these facts in determining whether to purchase their iPhones, and would not have

6   purchased their iPhones and/or would have purchased a competing product instead" (FAC ¶ 156)

7   does not state a claim.  Plaintiff does not allege that he based his purchase on any statement or

8   omission about the signal meter rather than on the myriad of other reasons for purchasing an

9   iPhone (including plaintiff's apparently positive experience with his first iPhone).  *See Cohen*,

10  178 Cal. App. 4th at 979; *see also Hangman Ridge Training Stables*, 105 Wn.2d at 793 ("the

11  need to find a causal link between the alleged acts and the plaintiff's injury" is an essential

12  element of the WCPA).

13         Plaintiff's attempt to concoct a post-sale reliance theory — that he relied on the signal

14  meter in deciding whether to make or receive calls — also fails.  As set forth above, if plaintiff

15  experienced reception issues, he knew it and could have returned the phone.

16     **C.     Plaintiff's UCL Claim Also Fails Because Plaintiff Does Not Allege "Unfair"**

17          **Conduct Under the UCL**

18         For a business practice to be "unfair," the unfairness must be "tethered" to violation of a

19  legislatively declared policy.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163,

20  186-87 (1999); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 991 (2008).  Here, plaintiff has not

21  articulated any "tether" to a statutory policy.  (FAC ¶¶ 137-45)  Oddly, plaintiff cites to the policy

22  statement of the UCL itself (FAC ¶ 45).  This exercise in circular logic would render the *Cel-Tech*

23  standard meaningless, since any conduct that is unfair under the UCL necessarily violates the

24  policy of the UCL.  The point of *Cel-Tech* is that plaintiff must give a UCL "unfairness" claim

25  content by pointing to the policy of a *different* statute.  Plaintiff fails to do so.  His "unfairness"

26  claim should be dismissed because he "identifies no particular section of [any] statutory scheme

27  which was violated," and does not "describe with any reasonable particularity the facts supporting

28  [the] violation."  *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).

1    Plaintiff's "unfairness" claim also fails under the "Federal Trade Commission Act

2   section 5 test" articulated in *Camacho v. Automobile Club of Southern California*.  That test

3   requires:  "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by

4   any countervailing benefits to consumers or competition; and (3) it must be an injury that

5   consumers themselves could not reasonably have avoided."  142 Cal. App. 4th 1394, 1403

6   (2006).  To support his claim, plaintiff alleges that Apple's conduct was "substantially injurious"

7   and that the "utility of [Apple's alleged] conduct, if any, is outweighed by the consequences to

8   Plaintiff and the Class."  (FAC ¶¶ 142-143)  This is exactly the type of "formulaic recitation of

9   the elements of a cause of action" that *Twombly* and *Iqbal* hold are insufficient.

10    In any event, as set forth above, plaintiff alleges no injury, much less a "substantial"

11   injury.  It is not plausible that the alleged inaccuracy of the signal meter in and of itself

12   constituted "substantial" injury since the signal meter had no effect on the iPhone's performance,

13   and because the alleged issue was addressed and corrected by the July 15, 2010 software update.

14   Moreover, as the FAC establishes, plaintiff could "reasonably have avoided" the alleged injury by

15   returning the phone.  Plaintiff has not stated a claim for unfair conduct.

16   **IV.    PLAINTIFF'S BREACH OF CONTRACT AND BREACH OF THE DUTY OF**
       **GOOD FAITH AND FAIR DEALING CLAIMS FAIL**
17

18    Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair

19   dealing are legally deficient and must be dismissed.  Plaintiff fails to plead facts establishing the

20   formation, existence, or breach of a contract.  His claim for breach of the covenant of good faith

21   and fair dealing is similarly barred by his failure to allege either the existence of a contract or

22   conduct frustrating the terms of such a contract.

23    To plead a claim for breach of an express contract, plaintiff must, at a minimum, identify

24   the relevant contract and the specific contractual term that the parties agreed to and that the

25   defendant supposedly breached.  *See Progressive W. Ins. Co. v. Superior Court*, 135 Cal. App.

26   4th 263, 281-82 (2005); *Otworth v. S. Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458-59 (1985).

27   The FAC fails to specifically identify *any* contract.  To the extent plaintiff alleges a contract with

28   respect to his iPhone purchase (*see* FAC ¶ 85 (alleging in conclusory terms that "[u]pon sale of

1   iPhones to Plaintiff and Class Members a contract was formed")), he fails to allege any term of

2   that contract, let alone a term that is relevant to the signal meter or that Apple allegedly breached.

3   Thus, plaintiff fails to state a claim for breach of an express contract. *See Das*, 2011 U.S. Dist.

4   LEXIS 136740, at *38 (dismissing contract claim where plaintiffs failed to allege existence of

5   contract).

6         Unable to identify any term in an actual iPhone sales contract which relates to the signal

7   meter, plaintiff instead attempts to turn the iPhone User Guide into "part of the contract for the

8   purchase of the iPhones."  (FAC ¶ 86)  This ploy fails on multiple grounds.  First, plaintiff never

9   alleges, and it is clear that he cannot allege, that he personally ever *saw* the User Guide.  Rather,

10  the FAC carefully alleges that "users" see the Guide and that Apple "provided access to the User

11  Guide."  (*Id.*)  Such circumlocution would not be necessary if plaintiff had seen the User Guide

12  prior to purchase.  He thus cannot have relied on it as part of a "contract" he accepted.

13        Second, the FAC's allegation that "Apple provided access to the User Guides to Plaintiff

14  and the Class at the time of contract and the Guides are part of the contract for the purchase of the

15  iPhones" (*id.*) is disingenuous.  It is evident from the allegations of the FAC that iPhone

16  purchasers do not see the User Guide until *after* they purchase their iPhones and begin to use

17  them.  The FAC alleges:

18              At relevant times Apple directed the iPhone purchaser and user to
                tap the iPhone User Guide bookmark on Safari, the application used
19              to access the internet that comes preloaded on the iPhone, or to visit
                help.apple.com/iPhone or www.Apple.com/support/iPhone to view
20              the User Guide.  The Fingertips Guide that comes in the box with
                purchase of the iPhone directs the purchaser to use the same means
21              to access the User Guide.

22  (FAC ¶ 20)  These allegations make clear that Apple's supposed "directions" are *viewed on the*

23  *phone after it is purchased and activated*.   Similarly, the Fingertips Guide that comes in the box

24  is not seen by the user until after purchase and is not part of the purchase contract.  Perhaps most

25  fundamentally, as the FAC itself acknowledges, the User Guide is not a contract; it is a manual of

26  instructions for using the iPhone (*see* FAC ¶ 20, describing the User Guide as "manuals and

27  instructions" for the iPhone user).  For all these reasons, the User Guide is not a contract between

28  Apple and plaintiff.

Further, even assuming *arguendo* that the User Guide did contain contractual commitments to plaintiff, the FAC fails to allege the breach of any term in the User Guide. Plaintiff alleges that the User Guide "promise[s] to provide a working Signal Meter" and "promise[s] that the Signal Meter is and can be properly used to track whether the user is within sufficient range of the cellular network, in order to make and receive calls, use the internet, perform text messaging, use email or websites." (FAC ¶¶ 87, 89)  Those allegations are false. The User Guide makes no such "promises."  It states only that the signal meter tells the user whether he or she has any signal (meaning there are 1-5 bars displayed as opposed to "No service" displayed) and that more bars mean a stronger network signal.  (Declaration of Stuart C. Plunkett in Support of Apple Inc.'s Request for Judicial Notice ("Plunkett Decl."), Ex. A)  The FAC is devoid of any allegation that the signal meter did not perform as described in the User Guide.

Nor does plaintiff state a claim for breach of the covenant of good faith and fair dealing. To do so, plaintiff must allege the existence of the contract between himself and the defendant upon which the purported breach is based.  *See In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *31 (dismissing claim where "[p]laintiffs [did] not actually identify the contract upon which they [were] relying for their breach of covenant of good faith and fair dealing claim"); *see also Vann v. Aurora Loan Servs. LLC*, No. 10-CV-04736-LHK, 2011 U.S. Dist. LEXIS 60223 (N.D. Cal. June 3, 2011); *Wootten v. BAC Home Loans Servicing, LP*, No. 10-CV-04946-LHK, 2011 U.S. Dist. LEXIS 12249 (N.D. Cal. Feb. 8, 2011).  As described above, the FAC does not identify a contract that contained the supposed implied covenant.

Moreover, the "scope of the implied covenant is 'circumscribed by the purposes and express terms of the contract,' and it 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'"  *Das*, 2011 U.S. Dist. LEXIS 136740, at *39 (quotations and citations omitted).  Thus, even if plaintiff had alleged a contractual relationship governing the signal meter, he was required to identify "conduct by Defendant that frustrated the purposes of the express terms of that contract."  *Vann*, 2011 U.S. Dist. LEXIS 60223, at *15.  The FAC fails to identify the terms, let alone the purpose,

of any purported contract.  "Without identification of the contract's purpose, the Court cannot determine whether Plaintiffs were deprived of the benefits of the contract at issue."  *In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *31.

Finally, if the User Guide *were* regarded as providing contractual terms, the User Guide's express provisions regarding the signal meter would govern and could not be expanded by the implied covenant of good faith and fair dealing as plaintiff seeks to do.  *Das*, 2011 U.S. Dist. LEXIS 136740, at *39-40.  Plaintiff's claim for breach of the implied covenant fails for this reason as well.

## V.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS OR IMPLIED WARRANTIES

### A.   Plaintiff Does Not Allege that His iPhone Failed to Function Properly

Plaintiff fails to allege facts establishing a breach of warranty.  Rather, the FAC concedes that the signal meter had no effect on the iPhone's functionality.  The FAC admits that the "core functions" of the phone — including making calls, using email, internet access, text messaging, playing and streaming videos or music, or downloading data — depend not on the signal meter, but on the presence of an actual "signal" from the network.  (FAC ¶¶ 3, 104)  Plaintiff does not allege that his iPhone failed to operate with respect to any of these core functions.  Accordingly, plaintiff fails to state a claim for breach of express or implied warranties.

In any event, even if the alleged signal meter issue could constitute a breach of warranty, it is undisputed that Apple provided a warranty repair for the issue.  Plaintiff concedes that the signal meter update provided by Apple cured the alleged signal meter issue.  (FAC ¶¶ 45-46, 55)  Further, the FAC admits that the update was available to plaintiff, who owned an iPhone operating on the 3G network (FAC ¶¶ 49-50), and that it was provided within the one-year warranty period.  Accordingly, there was no breach of any express or implied warranty.

### B.   Plaintiff's Warranty Claims Are Barred by His Failure to Give Pre-Suit Notice

The provisions of the California Uniform Commercial Code ("UCC") governing warranties require plaintiff to plead that he gave notice to Apple within a reasonable time of

1   discovering the alleged breach.  Cal. Com. Code § 2607(3)(A).  Such notice is a prerequisite for a

2   breach of express warranty claim.  *See Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal.

3   App. 4th 116, 135 (2008) ("This notice requirement is designed to allow the seller the opportunity

4   to repair the defective item, reduce damages, avoid defective products in the future, and negotiate

5   settlements."); *Fieldstone Co. v. Briggs Plumbing Prods., Inc.*, 54 Cal. App. 4th 357, 369 (1997);

6   *Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal. 3d 374, 380 (1974); 1-1200 CACI 1243.  Accordingly,

7   "the notice requirement means pre-suit notice."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932

8   (9th Cir. 2011) (dismissing with prejudice implied and express warranty claims where plaintiffs

9   made allegation that they "gave notice to Defendants to correct [the alleged] breach upon learning

10  of this breach by letter to Defendants and by the filing of the instant action," on the grounds that

11  pre-suit notice was not alleged); *see also Smith v. Apple Inc*., No. 08-AR-1498-S, 2008 U.S. Dist.

12  LEXIS 111777, at *3-4 (N.D. Ala. Nov. 4, 2008) (dismissing implied and express warranty

13  claims because plaintiffs failed to allege that they gave Apple notice of their purportedly

14  defective iPhones; "[a]ffirmatively pleading notice" is "critical to the stating of a claim for breach

15  of warranty").[9]

16          Plaintiff does not and cannot allege that he gave pre-suit notice, which is fatal to his

17  express and implied warranty claims.  Paragraph 117 of the FAC contains boilerplate allegations

18  that plaintiff gave notice, but carefully omits to state when notice was given or that it was given

19  pre-suit.  In fact, plaintiff's notice was sent on December 5, 2011 (*see* Ex. C to Plunkett Decl.),

20  approximately one month *after* his initial complaint was filed on November 3, 2011.  These

21  circumstances — including the ambiguous allegations regarding notice — are exactly those that

22  *Alvarez* held to bar the plaintiff's warranty claim.

23

24  _____

25      [9] Plaintiffs were also required to give notice under Apple's One (1) Year Limited
    Warranty, insofar as it applies to their claims.  Apple's warranty expressly provides for repair or
26  replacement, or refund of the purchase price, when a purchaser presents a valid warranty claim:
    "If a hardware defect arises and a valid claim is received within the Warranty Period, at its option
27  and to the extent permitted by law, Apple will either (1) repair the hardware defect at no
    charge, . . . (2) exchange the product . . . , or (3) refund the purchase price of the product."
28  (Plunkett Decl., Ex. B at 1)

Plaintiff's warranty-based claims also fail because he did not tender his iPhone for repair or replacement. Plaintiff concedes that Apple offered a post-sale return right for the iPhone. (FAC ¶¶ 27, 60, 63, 79, 152) As discussed above, if plaintiff's iPhone suffered from actual signal attenuation, it would have been immediately apparent to him. Yet nowhere in the FAC does plaintiff allege that he attempted to return his iPhone. Because plaintiff never contacted Apple about signal-strength problems or sought to return his iPhone, his warranty claims are barred.

## C.     Plaintiff Cannot State a Claim for Breach of Implied Warranty

Plaintiff's claim for breach of the implied warranty of merchantability fails for additional, independent reasons. The California Civil Code implies a warranty of merchantability that goods "[a]re fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a)(2). The implied warranty of merchantability "does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (citation omitted). The defect must render the product unfit for its ordinary purpose. *Id*. at 1295-96. For a plaintiff to establish a breach, the product must lack "even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).

Plaintiff cannot meet this standard. Plaintiff does not allege that the signal meter caused his iPhone to lack "even the most basic degree of fitness for ordinary use" as a mobile telephone. *Birdsong v. Apple Inc*., 590 F.3d 955, 958 (9th Cir. 2009) (citing *Mocek*, 114 Cal. App. 4th at 406) (affirming dismissal of claim for implied warranty of merchantability where plaintiffs alleged iPods could cause hearing loss at high volumes but conceded that "iPods play music, have an adjustable volume, and transmit sound through earbuds"). Nor can plaintiff seriously suggest that the alleged signal meter issue precluded the iPhone from functioning as a phone. On the contrary, as set forth above, the FAC concedes that the signal meter had no effect on the functionality of the phone. The FAC thus does not allege the facts necessary to establish breach of the implied warranty of merchantability.

### D.    Plaintiff's Claim Similarly Fails Under the Magnuson-Moss Warranty Act

Plaintiff's failure to allege viable state law claims for breach of express or implied warranty is fatal to his Magnuson-Moss Warranty Act claim because state law governs such claims. *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 798 (2002); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims"); *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD (PSG), 2011 U.S. Dist. LEXIS 97958, at *12 (N.D. Cal. Aug. 30, 2011); *In re iPhone 3G Prods. Liab. Litig.*, 728 F. Supp. 2d 1065, 1072 n.10 (N.D. Cal. 2010) (MMWA claim is "not viable in the absence of any state law warranty claims because [it] merely provides a federal cause of action for state law implied warranty claims").

Plaintiff's MMWA claim also fails to comply with the analogous notice requirement. 15 U.S.C. § 2310(e); *see also, e.g.*, *Galicia v. Country Coach, Inc.*, 324 Fed. App'x 687, 689-90 (9th Cir. 2009); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 U.S. Dist. LEXIS 48367, at *27-29 & n.8 (N.D. Cal. June 5, 2009).  Plaintiff does not allege that he gave individual notice, let alone notice on behalf of the putative class, as required by MMWA.  Accordingly, plaintiff's MMWA claim must be dismissed.[10]

## VI.    PLAINTIFF'S CLAIM FOR RESTITUTION SHOULD BE DISMISSED

Although plaintiff labels his final cause of action "restitution," the Court "must look to the actual gravamen of [the] complaint to determine what cause of action, if any, he stated." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004).  Here, the "restitution" claim is plainly one for unjust enrichment.  Plaintiff alleges that Apple "unjustly retained" benefits at plaintiff's expense and was thus "unjustly enriched."  (FAC ¶¶ 181, 183)  Unjust enrichment, however, is not a cause of action under California law.  *See In re iPhone Application Litig.*, 2011 U.S. Dist.

---

[10] Plaintiff also alleges that Apple failed to "conspicuously disclose or make . . . available" its warranty terms to iPhone users.  (FAC ¶ 128)  But plaintiff does not allege that he was unaware of Apple's express warranty terms prior to purchase.   Nor are his boilerplate allegations sufficient to establish a violation.  *Rooney v. Sierra Pac. Windows*, No. 10-CV-00905-LHK, 2011 U.S. Dist. LEXIS 117294 (N.D. Cal. Oct. 11, 2011) (noting that the court need not accept allegations that are merely conclusory).

1   LEXIS 106865, at *45-46 ("there is no cause of action for unjust enrichment under California

2   law"); *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 U.S. Dist. LEXIS 108500, at *38

3   (Nov. 19, 2009) ("[U]njust enrichment is a theory of recovery, not an independent legal claim.").

4   Plaintiff's claim must be dismissed.  *See, e.g.*, *Marcelos v. Dominiguez*, No. C 08-00056 WHA,

5   2008 U.S. Dist. LEXIS 91916, at *31 (N.D. Cal. Apr. 21, 2008) ("Defendants . . . move to

6   dismiss the claim for rescission and restitution on the ground that it is not a claim for relief, but

7   rather a remedy.  Defendants are correct").  Plaintiff may only seek restitution as a form of relief

8   to "the extent [he has] pled causes of action that give rise to restitution as a remedy."  *Fraley v.*

9   *Facebook, Inc.*, 2011 U.S. Dist. LEXIS 145195, at *78 (N.D. Cal. Dec. 16, 2011).

10         Even assuming plaintiff's restitution claim could stand alone, it is based on the same

11   factual allegations as the consumer protection claims.  Like the consumer protection claims,

12   plaintiff's "restitution" claim is grounded in fraud and, accordingly, must satisfy Rule 9(b).  *See,*

13   *e.g.*, *Howl v. Bank of Am., N.A.*, No. C 11-0887 CW, 2011 U.S. Dist. LEXIS 91698, at *11-12

14   (N.D. Cal. Aug. 17, 2011) (dismissing fraud-based restitution claim because plaintiff failed to

15   satisfy Rule 9(b)); *see also In re Actimmune Mktg. Litig.*, 2009 U.S. Dist. LEXIS 103408, at *50

16   ("plaintiffs' only basis for their unjust enrichment claim would, like their other claims, sound in

17   fraud, and be subject to Rule 9(b)'s particularity requirement").  As discussed above, plaintiff has

18   not alleged a representation or omission that comes close to meeting Rule 9(b), and thus his

19   restitution claim fails.  *See, e.g.*, *Meaunrit v. Pinnacle Foods Grp., LLC*, No. C 09-04555 CW,

20   2010 U.S. Dist. LEXIS 43858, at *36 (N.D. Cal. May 5, 2010) ("Plaintiffs' unjust enrichment and

21   restitution claim fails because they have not stated a predicate claim warranting such relief.").

## CONCLUSION

23         For the foregoing reasons, the FAC should be dismissed with prejudice.

24   Dated:  March 8, 2012                    PENELOPE A. PREOVOLOS
                                             STUART C. PLUNKETT
25                                           SUZANNA P. BRICKMAN
                                             MORRISON & FOERSTER LLP
26
                                             By:    /s/ Penelope A. Preovolos
27                                                  Penelope A. Preovolos
                                                    *Attorneys for Defendant*
28                                                  APPLE, INC.